IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

STEPHANIE S.[1]

   Plaintiff,

 vs.

ANDREW SAUL,
Commissioner of Social Security,

   Defendant.

Case No. 3:18-cv-01267-AA
**OPINION AND ORDER**

_____

AIKEN, District Judge:

   Stephanie S. ("plaintiff") brings this action pursuant to the Social Security Act

("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner of Social Security ("Commissioner"), who denied plaintiff's application

for Supplemental Security Income ("SSI") on June 1, 2017. For the reasons set forth

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

below, the Court REVERSES the decision of the Comissioner and REMANDS this case for an immediate award of benefits.

## BACKGROUND

Plaintiff protectively filed an application for SSI on November 15, 2013. Her application was denied initially and upon reconsideration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). The ALJ held two hearings on this matter and issued an unfavorable decision finding that defendant was not disabled under the Act on February 29, 2016. After the Appeals Council denied plaintiff's request for review, plaintiff timely filed a complaint in this Court seeking review of thee ALJ's decision.

## STANDARD OF REVIEW

The district court must affirm the ALJ's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). Harmless legal errors are not grounds for reversal. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and internal quotation marks omitted). The court must evaluate the complete record and weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation

but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## THE COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler,* 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(l)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Accordingly, an ALJ must determine "(1) whether the claimant is 'doing substantial gainful activity;' (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work' and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date of November 13, 2013. Tr. 20. At step two, the

ALJ found that plaintiff had the following severe impairments: "morbid obesity, chronic low back pain, osteoarthritis of the knees, migraines/headaches and anxiety/posttraumatic stress disorder." *Id.* At step three, the ALJ determined plaintiff's impairments, whether considered separately or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Id.* at 21; *see also* 20 C.F.R. § 404.1520(d), 404.1525, and 404.1526. The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); § 416.920(e). The ALJ found that plaintiff

> has the [RFC] to perform light work as defined in 20 CFR 416.967(b) with exceptions. She can lift and carry up to ten pounds frequently and 20 pounds occasionally. She can stand or walk for approximately two hours total in an eight hour workday. She can sit up to eight hours in an eight hour workday with normal breaks. She can only occasionally climb ramps or stairs, and never climb ladders, ropes or scaffolds. She can occasionally stoop, kneel, crouch and crawl. She should work in a work environment that has no more than a moderate noise level, such as a business office or department store. She can remember, understand and carry out tasks or instructions consistent with occupations with a specific vocational preparation rating of 1 or 2. She should not perform work that requires interaction with the general public. She can work in proximity to coworkers, but should not perform tasks that require teamwork. She also should not work around hazards such as unprotected heights and dangerous machinery.

*Id.* at 23. At step four, the ALJ found that plaintiff could not perform any past relevant work. At step five, the ALJ considered plaintiff's age, education, work experience, and RFC and found that there were other jobs existing in significant numbers in the national economy that plaintiff could perform, including electrical

accessories assembler, router, and document preparer.  *Id*. at 30-31.  Accordingly, the ALJ found that plaintiff was not disabled under the Act.

## DISCUSSION

Plaintiff argues that the ALJ committed following harmful legal errors: (1) improperly rejecting the medical opinions of two treating physicians; (2) improperly discrediting plaintiff's symptom testimony; (3) failing to present the vocational expert ("VE") with hypotheticals that accurately represented the severity of plaintiff's limitations at step five.  The Court shall address each issue in turn.

I.    *Medical Opinion Evidence*

First, plaintiff argues that the ALJ erred by improperly discounting the opinions of treating medical sources Dr. Thomas Schwartz, M.D. and Dr. Bethany Higam, Psy.D.

There are three types of medical opinions in Social Security disability cases: those of treating, examining, and reviewing physicians.  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Id*. at 1202; *accord* 20 C.F.R. § 404.1527(d).  A treating source's opinion regarding the "nature and severity" of impairments is given controlling weight when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2).  Unless a treating source is given controlling weight, the commissioner will consider several

factors in weighing medical opinions: (1) examining relationship; (2) treatment relationship, including length of treatment relationship, frequency of examination, and nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *Id*. at § (c)(1)-(2).

Accordingly, "the Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." *Lester v. Chafer*, 81 F.3d 821, 830 (9th Cir. 1995). Moreover, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons." *Id*. at 830-831. "The ALJ is responsible for resolving conflicts in the medical record." *Carmickle*, 533 F.3d at 1164. "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *See lvlorgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "[T]he consistency of the medical opinion with the record as a whole" is a relevant consideration in weighing competing evidence. *Orn*, 495 F.3d at 631.

The ALJ gave limited weight to three medical opinions, one signed by both Dr. Schwartz and Dr. Higa on December 30, 2016 and two others by Dr. Higa from February 21, 2017 and March 10, 2017. The ALJ specifically opined that:

> [Dr. Schwartz's and Dr. Higa's] limitations are not supported by the medical record described in more detail above, which shows although the claimant does have some mental health issues, they are not to the severity they have described. For instance, the claimant generally has normal concentration and memory and often presents as only mildly anxious. Additionally, the record does not support such severely limited physical limitations, and instead, as noted previously, she often presents with minimal sensory and motor deficits and normal coordination and gait. Also, there is no support that she is limited by severe headaches, as they are rarely mentioned in the medical record.

Tr. 29.  The ALJ's discussion points to variation in the record. For example, the ALJ noted,

> In May 2016, [plaintiff's] low back pain was stable with little change clinically. She reported her low back pain radiated to her right hip and down the back of her right leg to her knee. She was advised to maintain regular activity. It also was noted she had stopped chronic opiates. Then in June 2016, she reported having a lot of body pain and she could not walk around the grocery store due to leg pain. Yet, in December 2016, on examination, she had no tenderness to palpation midline of her back. She had no motor deficits or sensory deficits and her coordination and gait were normal.

*Id*. at 25.  The ALJ interpreted such fluctuation and variation of symptoms as inconsistent with the severity of limitations in the treating physicians' opinions and subjective symptom testimony. *Id*. at 29-30.

In the December 2016 opinion, Dr. Schwartz and Dr. Higa indicated that plaintiff's medical conditions included "morbid obesity, degenerative arthritis of both knees, chronic low back pain, panic disorder with agoraphobia, PTSD, paranoia, asthma, migraine."  *Id*. at 589.  They opined that she has "profoundly limited mobility" from knee and back pain, "severe, disabling agoraphobia and paranoia," "severe headaches," and "numbness and weakness in her legs."  *Id*.  They estimated that plaintiff could frequently lift or carry less than ten pounds for one third of a workday, stand or walk for ten minutes at a time, sit for more than six hours with normal breaks, and that she could never climb, balance, stoop, bend, kneel, crouch, or crawl. Tr. 589-90.  They also noted that plaintiff "has not tolerated antidepressant or antipsychotic medications."  Tr. 591.  Both doctors estimated that plaintiff would be unable to complete even simple work tasks for forty percent of the workweek and

would miss sixteen or more hours per month.  Dr. Schwartz and Dr. Higa explained that plaintiff's absenteeism would result from "severe agoraphobia and paranoia combined with" knee and back pain and headaches that "would prevent her from leaving her home."

In February 2017, Dr. Higa filled out a disability form for plaintiff's housing provider in which she mentioned her opinion that plaintiff was disabled, which was defined as having

> [a] physical, mental or emotional impairment that is expected to be of long, continued and indefinite duration; substantially impedes his or her ability to live independently; and is of such a nature that ability to live independently could be improved by more suitable housing conditions.

Tr. 595.  On March 10, 2017, Dr. Higa noted that she filled out a JOBs program form in which she concluded that plaintiff is likely to be permanently disabled.

Plaintiff identified instances throughout the record consistent with the treating physicians' opinions. For example:

> (1) [Plaintiff] routinely presented with moderate to high anxiety, as well as daily panic attacks, agoraphobia and isolation, derealization, irritation and anger, night mares, recurrent memories of abuse, and chronic stress and paranoia (Tr. 365, 379-80, 396, 657, 674, 689-90); (2) [plaintiff] exhibited chronic bilateral knee pain due to osteoarthritis, low back pain radiating down her lower extremities, bilateral hip pain, unsteadiness, lower extremity numbness, some lower extremity weakness and antalgic gait, and the inability too walk around the grocery store (Tr. 309, 347-348, 413, 587); and (3) medical notes throughout the record indicate sever headaches, particularly menstrual migraines (Tr. 284, 413, 447, 492, 658, 746).

Pl's. Op. Br., 11.  The ALJ likewise noted many of these examples in her decision.

Plaintiff argues that the December 30, 2016 opinion of Dr. Schwartz and Dr. Higa should have been controlling for three reasons.  First, the ALJ erred by using

conclusory and boilerplate language to reject it. Second, the ALJ misrepresented the record by selectively focusing on aspects of the record that suggest non-disability. Third, the ALJ mischaracterized the evidence of disability by failing to address the specific reasons that Dr. Schwartz and Dr. Higa believed plaintiff to be disabled. In so doing, plaintiff contends that the ALJ failed to provide either clear and convincing or specific and legitimate reasons for the rejection.

Plaintiff mistakenly argues that the ALJ failed entirely to address Dr. Higa's February and March 2017 opinions: in fact, the ALJ *did* address the February 2017 opinion but *did not* mention the March 2017 opinion. Tr. 29. However, plaintiff's assignment of error is of no effect: the arguments regarding the December 2016 opinion apply with equal force to all of Dr. Higa's and Dr. Schwartz's opinions because the ALJ rejected all of them together with the same reasoning. Tr. 29.

In response, the Commissioner argues that the ALJ provided specific and legitimate reasons supported by substantial evidence by pointing to parts of the medical record that do not support limitations as severe as those described by Dr. Schwartz and Dr. Higa. Further, the Commissioner argues that the evidence may be rationally interpreted in more than one way and that the Court must defer to the ALJ's interpretation.

The Court finds that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence when rejecting the opinions of Dr. Schwartz and Dr. Higa. Because the opinions of Dr. Schwartz and Dr. Higa were contradicted by other medical opinions, the ALJ was required to provide specific and legitimate

reasons for rejecting them.  Plaintiff's argument is persuasive for three reasons: (1) the ALJ did not apply all of the factors required for weighting medical opinions; (2) the ALJ did not provide an explanation for why the opinions of consulting and reviewing physicians were given more weight than Dr. Schwartz's and Dr. Higa's; and (3) the inconsistencies pointed to in the medical record constituted impermissible cherry-picking of the record.

The ALJ erred by neglecting to discuss the length and nature of plaintiff's treating relationship with Dr. Schwartz and Dr. Higa.  Dr. Schwartz's eighteen years as plaintiff's primary care provider and Dr. Higa's regular behavioral health treatment of plaintiff since 2012 were unacknowledged by the ALJ.  And the ALJ did not explain why she gave less weight to the longitudinal perspective afforded by these relationships than her own assessment of the medical record or the opinions of state consulting and reviewing physicians.[2]  Given the nature and length of these relationships and frequency of exams, the ALJ's exclusion was legal error.

The ALJ's arguments were also conclusory, absent, or used boilerplate language.  The Ninth Circuit has held that,

> an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.

---

[2] 20 C.F.R. 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

*Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v. Carter*, 100 F.3d 1462, 1464 (9th Cir. 1996). First, the ALJ impermissibly ignored Dr. Higa's March 2017 opinion which clarified that she believed plaintiff's disability to be permanent. Tr. 29. Second, the ALJ gave some weight to the opinions of consulting examiner ("CE"), Dr. Ellison, and reviewing physician, Dr. Westfall without providing reasons why these opinions were more persuasive. Tr. 29-30. More than one reviewing physician concluded that there was insufficient evidence to properly assess plaintiff's functional limitations, raising questions as to why the CE and reviewing physicians' opinions were given more weight than the treating ones. Tr. 29-30. However, the ALJ weighted each of these opinions without explanation. *Id.*

Third, the ALJ gave limited weight to the opinions of Dr. Schwartz and Dr. Higa without providing substantive explanations. Tr. 29. The ALJ's unstated but implicit reason for weighting the opinions as she did seems to be that inconsistencies in the record as a whole indicated limitations less severe than those described by the treating sources. *Id.* If inconsistency and inconclusiveness of the evidence is the reason for rejecting the treating opinions, as the Commissioner argues, the ALJ must explain why that same evidence better supports the other opinions and does not also render them unreliable. However, the Court is left to infer, without explanation, that the record must be more consistent with the opinions of Dr. Ellison and Dr. Westfall.

The ALJ also erred impermissibly cherry-picking the record. An ALJ may not "'selectively focus" on parts of the medical record "which tend to suggest non-disability." *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001); *Accord,*

*Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) ("[T]he ALJ selectively relied on some entries in Holohan's records . . .and ignored the many others that indicated continued severe impairment."). In *Ghanim v. Colvin*, an ALJ cited treatment notes which recorded the plaintiff's "good eye contact, organized and logical thought content, . . . focused attention," and other similar observations. 763 F.3d 1154, 1164 (9th Cir. 2014). The Ninth Circuit rejected this reasoning:

> [T]he treatment records must be viewed in light of the overall diagnostic record. When read as a whole, the treatment notes do not undermine [plaintiff's] testimony. Rather, they consistently reveal that, despite some occasional signs of improvement, [plaintiff] continued to suffer frequent nightmares, hallucinations, social anxiety, difficulty sleeping, and feelings of hopelessness.

*Id*. Here, the ALJ relied heavily on treatment notes indicating that, for example, plaintiff was "alert and oriented," euthymic to upbeat," "in no apparent distress," or that she "had grossly intact memory and conversational understanding," normal motor function," no motor deficits or sensory deficits," and was an "adequate historian." Tr. 26. Like in *Ghanim*, however, the overall diagnostic record reveals persistent severe limitations consistent with the concurring treating opinions. The ALJ also noted many of these instances and did not explain why they were given less weight than instances that suggested less severe impairment.

Although the Court must defer to the ALJ's findings when the record is inconclusive, variation does not, standing along, constitute inconsistency and, inconsistency does not constitute inconclusiveness. C.F.R. 404.1527(c)-(d) requires the ALJ to at least give reasons that instances throughout the record consistent with

the treating opinions were less persuasive than the apparent discrepancies, especially in light of the presumptive weight given to treating physicians' opinions.

Plaintiff's final contention is that the ALJ did not specifically address the reasons why the treating physicians believed plaintiff to be disabled. An ALJ may not base findings on a mischaracterization of the evidence. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999). Here, for example, Dr. Schwartz and Dr. Higa's assessment of plaintiff's disabling limitations was based on the combination of severe agoraphobia, paranoia, knee and back pain, and headaches that would prevent her from leaving her home. The several instances in the record of plaintiff socializing are not, without explanations specific to the medical conditions, inconsistent with limitations of agoraphobia, paranoia, and the other conditions. For the foregoing reasons, the ALJ's rejection of the treating opinions was harmful error.

II.     *Subjective Symptom Testimony*

The ALJ makes a credibility determination to assess the subjective symptom testimony of a claimant amidst a two-step process that, first, evaluates the existence of an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms and, second, addresses the intensity, persistence, and limiting effects of the alleged symptoms based on an examination of the entire record. 20 C.F.R §§ 404.1529(a), (c)(l); 416.929(a), (c)(l); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

When a claimant's medically determined impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record

contains no affirmative evidence of malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of her symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d at 1163 (9th Cir. 2014). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In weighing a plaintiff's credibility, the ALJ may consider many factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). However, "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted).

Here, the ALJ found that plaintiff's medically determined impairments could be expected to cause the claimed symptoms, however "the claimant's statements

concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. Tr. 24.

Here, there was no affirmative evidence of malingering, and so the ALJ needed to provide clear and convincing reasons for discrediting plaintiff's symptom testimony. The ALJ failed to meet that standard when discrediting plaintiff's subjective symptom testimony on her physical and mental conditions, headaches, disability, dependence on daughter, limited social functioning, and activities of daily living. The Court shall address each argument in turn.

It is well established that "[c]ycles of improvement and debilitating symptoms are a common occurrence" and an ALJ cannot "pick out a few isolated instances" to discredit a plaintiff's testimony and must view the record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

A.    *Objective Medical Record*

Here, the Court finds that the ALJ's treatment of the objective medical record was legally insufficient. In addition to the discussion above, the ALJ implied, without expressly stating, that several of plaintiff's conditions may be improved or alleviated with medication or behavioral changes. For example, the ALJ noted that plaintiff reported some improvement in her mental conditions when using lorazepam and other prescription medications. Tr. 26. One note in the record also indicates the Imitrex helps her symptoms, but the note lacks any additional detail as to how much

or how long it provides relief.  Tr. 413.  The ALJ also mentioned that plaintiff "has been advised" that her limitations stemming from morbid obesity would improve with weight loss, a healthy diet, and activity.  Tr. 25.

However, the ALJ neglected to acknowledge the treating physicians' opinions throughout the record indicating plaintiff's resistance and intolerance of treatment. For example, in 2014 Dr. Higa noted,

> Patient's functioning appears to be compromised by seeming anxiety/trauma and major depression. Patient is in need of significant intervention for her myriad psychiatric needs, but is likely to be resistant to efforts at getting patient engage in treatment at all, let alone intensive treatment.

Tr. 269.  In 2016, Dr. Higa observed that plaintiff's "chronic stress and paranoia lead her to struggling to function in ways that would help her better manage her pain and other health conditions."  Tr. 365.  And Dr. Schwartz noted later in 2016 that plaintiff "has not tolerated antidepressant or antipsychotic medications."  Tr. 591. Again, the ALJ erred by selectively focusing on aspects of the record that suggest non-disability.

B.    *Inconsistent Statements*

The ALJ found plaintiff's statements pertaining to her disability unreliable due to inconsistencies.  The Commissioner argues that the ALJ's findings were reasonable and the Court must defer when evidence may be interpreted in more than one way.  Def.'s Br., 15 (citing *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005)). Plaintiff argues any inconsistencies in her testimony are minor and unrelated to her functioning. Pl's Br., 14.

Plaintiff testified that Dr. Schwartz told her to use marijuana "over anything else" even though it makes her paranoia worse when, in fact, Dr. Schwartz said to use it for pain and only if there were no adverse side effects. Tr. 28. The ALJ implies that plaintiff's statement is inconsistent and meant that she was using marijuana as treatment for mental conditions. The Commissioner argues, without merit, that inconsistent statements regarding drug use indicate "lack of candor the carries over" to pain testimony. Def.'s Br., 15 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)). The record is clear that plaintiff's use of marijuana was part of a strategy to wean off opiates used for her pain. Tr. 594. Plaintiff also correctly points out that she continued to use prescription medications for her psychological treatments and that this minor inconsistency in testimony has no bearing on plaintiff's functioning. Pl.'s Reply Br., 14.

The remaining inconsistencies are similarly minor and unavailing. The ALJ noted the plaintiff stated she spends her days "only sitting and staring out the window" but then said "she watches television, reads, and listens to music" when questioned more. Tr. 28. Plaintiff also said that she likes to be alone and later mentioned not minding that her daughter was leaving the house on weekends more often for sleepovers because she is a "whirlwind." Tr. 28. The Court finds that these minor discrepancies do not indicate poor candor and have no bearing on plaintiff's functionality.

/ / /

/ / /

C.    *Activities of Daily Living*

The Commissioner argues that the ALJ provided clear and convincing reasons for discrediting plaintiff's testimony where her statements were inconsistent with her claimed inability to do substantial daily activities. Def.'s Br., 13 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Plaintiff argues that the ALJ offered only "vague assertions" of inconsistency, overstated plaintiff's activities, and did not explain how the activities were inconsistent with plaintiff's limitations. Pl.s Reply Br., 7 (citing *Garrison v. Colvin*, 795 F.3d 995, 1016 (9th Cir. 2014)).

Plaintiff testified that she relies on her daughter for many basic needs. For example, she stated that her daughter does laundry, cleans, and attended a parent teacher conference for her younger son. Plaintiff also testified to secluding herself during the day, staying in her bedroom for most of the past two and a half years, having panic attacks in public, feeling threatened by strangers, becoming paranoid by people, and not going out alone. Tr. 24.

The ALJ found plaintiff to be more independent than she claimed. For example, plaintiff's daughter was only ten years old when plaintiff filed her application, and her son was not yet born. When plaintiff's son went to preschool, she said she was able to get more done around the house. In 2014, plaintiff drove to a consultative exam, could dress and bathe on her own, and did a little laundry, housework and cooking. In December 2015, the ALJ noted that plaintiff was able to do her ADLs and shopping. Tr. 27. Based on several isolated examples of social

interaction, the ALJ concluded that plaintiff has some capacity to be around people. Specifically, plaintiff spent time in 2013 at the VOA supporting others struggling with addition, became a minister in 2014 and performed some marriages, reported being able to do shopping in December 2015.  Tr. 27

The Court finds that the ALJ erred because the activities are minor and not inconsistent with disability.  Further, the ALJ did not indicate how they relate to the claimed disabilities.  "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).  Further, when a plaintiff does not claim to be completely unable to do any daily activity, evidence of some basic activity does not contradict the testimony.  *Ghanim v. Colvin*, 763 F.3d at 1164 (9th Cir. 2014).  Here, plaintiff's limitations result from the combined effects of multiple conditions.  It is not self-evident, as the ALJ indicates, that minimal social activity is inconsistent with plaintiff's diagnosed conditions of agoraphobia, anxiety, depression, paranoia, and PTSD.  Neither is it apparent that minimal housework or driving to a doctor's appointment undermines plaintiff's testimony that she relies heavily on her daughter.

III.    *Step Five*

During the administrative  hearing, the ALJ posed hypotheticals to a VE consistent with the ultimate RFC.  The VE opined that plaintiff would be able to perform the requirements of occupations consistent with the RFC, such as assembler

of electrical accessories, router, and document preparer.  Tr. 30-31.  Those jobs exist in sufficient numbers in the national economy and the ALJ found plaintiff to be non-disabled based on those hypotheticals.  Tr. 30-31.  However, the ALJ and plaintiff's attorney also posed hypotheticals to the VE that were consistent with the medical opinions of plaintiff's treating physicians. The VE determined that missing sixteen hours a week or being unable to complete 75% of assigned tasks would preclude plaintiff from any full-time, unskilled employment.  Tr. 86-89.  Plaintiff contends that the ALJ erred by basing the non-disability finding only on the hypotheticals that excluded the limitations described by the treating physicians.

Plaintiff's argument that the ALJ relied on incomplete hypotheticals is persuasive. The Ninth Circuit has held that expert testimony "has no evidentiary value to support a finding that the claimant can perform jobs in the national economy" when based on hypotheticals that do not include all of a plaintiff's limitations.  *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991) (citing *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988)).  Erroneous rejection of the treating opinions and plaintiff's testimony undermined the ALJ's RFC findings and the hypotheticals posed to the VE.

IV.    *Scope of Remand*

The Court has discretion under 42 U.S.C. § 405(g) to decide "whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (internal citation omitted).  The issue turns on the utility of further proceedings.  *Id.*  A court may not award benefits punitively and

must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec.,* 635 F.3d 1135, 1138 (9th Cir. 2011).

The credit-as-true doctrine is settled in the Ninth Circuit and binding on this Court. *Garrison,* 759 F.3d at 999. Under this doctrine, courts must utilize the following sequential evaluation process: (i) determine whether the ALJ made a harmful legal error, such as failing to provide legally sufficient reasons for rejecting evidence, be it claimant testimony or medical opinions; (ii) review the whole record to assess whether it is fully developed, free from conflicts and ambiguities, and that all essential factual issues have been resolved; and (iii) determine whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Dominguez v. Colvin,* 808 F.3d 403, 407-08 (9th Cir. 2015) (internal quotation marks and citation omitted). Additionally, even if all three of the foregoing primary elements are met, courts can still remand for further proceedings if the record as a whole "creates serious doubt" about whether a claimant is disabled as a matter of law. *Id.*

Here, the first prong of the credit-as-true analysis is met. The ALJ made harmful legal errors by failing to provide legally sufficient reasons for rejecting plaintiff's subjective symptom testimony and the treating medical opinions. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Absent sufficient reasons to discount the medical opinions and plaintiff's testimony, both are given full weight. Thus, the first prong is met.

With respect to the second prong, the Court finds that the record is fully developed. The Commissioner failed to establish ambiguities or factual issues that need to be resolved. At the final step, the Court considers whether the ALJ would be required to find plaintiff disabled if the treating opinions were credited as true. The VE confirmed plaintiff's disability beyond doubt when determining that missing sixteen hours per month of work would preclude plaintiff from any full-time employment which was consistent with opinion evidence offered by plaintiff's treating physicians.

Thus, the Court finds that the record is fully developed and further administrative proceedings would serve no useful purpose. Crediting the evidence in the record as true, the ALJ would be required to find that plaintiff is disabled. Therefore, the Court reverses the commissioner's decision and remands for an immediate award of benefits.

## CONCLUSION

The commissioner's decision that plaintiff is not disabled is REVERSED and the case is REMANDED for an immediate award of benefits.

IT IS SO ORDERED.

Dated this  31st  day of March 2021.


                        /s/Ann Aiken
                        Ann Aiken
                United States District Judge